**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **DYUTHI PRAKASH**, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**NELSON WORLDWIDE, LLC,**<br><br>Defendant. | Case No. 0:26-cv-01818<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Dyuthi Prakash ("Plaintiff"), through her attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Nelson Worldwide, LLC ("Nelson" or "Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to her own actions, counsel's investigations, and facts of public record.

## NATURE OF ACTION

1. This class action arises from Defendant's failure to protect highly sensitive data.

2. Defendant is a Minneapolis-based design firm consisting of a network of 20 offices that offer services including architecture, interior design, graphic design, and brand strategy services.[1]

[1] *About*, NELSON WORLDWIDE LINKEDIN, https://www.linkedin.com/company/nelsonworldwide/ (last visited March 11, 2026).

3. As such, Defendant stores a litany of highly sensitive personal identifiable information ("PII" or "Private Information")—about its current and former employees. But Defendant lost control over that data when cybercriminals infiltrated its insufficiently protected computer systems in a data breach (the "Data Breach").

4. On or about March 6, 2026, cybercriminal group, Chaos, announced that they had breached Defendant's systems and exfiltrated 400GB of data, including employee information.[2]

5. In other words, Defendant had no effective means to prevent, detect, stop, or mitigate breaches of its systems—thereby allowing cybercriminals unrestricted access to its current and former employees' Private Information.

6. On information and belief, cybercriminals were able to access employees' Private Information because Defendant failed to adequately train its employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's Private Information. In short, Defendant's failures placed the Class's Private Information in a vulnerable position—rendering them easy targets for cybercriminals.

7. Plaintiff is a former employee of Defendant and a Data Breach victim. She brings this class action on behalf of herself, and all others harmed by Defendant's misconduct.

8. The exposure of one's Private Information to cybercriminals is a bell that cannot be unrung. Before this data breach, Defendant's current and former employees' private information was exactly that—private. Not anymore. Now, their private information is forever exposed and unsecure.

---

[2] Ransomware.Live, https://www.ransomware.live/id/bmVsc29ud29ybGR3aWRlLmNvbUBjaGFvcw== (last visited March 11, 2026).

## PARTIES

9. Plaintiff, Dyuthi Prakash, is a natural person and citizen of Astoria, New York where she intends to remain.

10. Defendant, Nelson Worldwide, LLC, is a company formed under the laws of Pennsylvania and with its principal place of business at 901 Marquette Avenue Suite 2850, Minneapolis, MN 55402.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Defendant and at least one Class Member are citizens of different states. And there are over 100 putative Class Members.

12. This Court has personal jurisdiction over Defendant because it is headquartered in Minnesota, regularly conducts business in Minnesota, and has sufficient minimum contacts in Minnesota.

13. Venue is proper in this Court because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND

***Defendant Collected and Stored the Private Information of Plaintiff and the Class***

14. Defendant is a Minneapolis-based design firm consisting of a network of 20 offices that offer services including architecture, interior design, graphic design, and brand strategy services.[3]

15. As part of its business, Defendant receives and maintains the Private Information of thousands of its current and former employees.

16. In collecting and maintaining the Private Information, Defendant agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their Private Information.

17. Under state and federal law, businesses like Defendant have duties to protect its current and former employees' Private Information and to notify them about breaches.

18. Defendant recognizes these duties, declaring in its "Privacy Policy" that it will only disclose Private Information for a specific set of purposes, and promises that:

a. "We have adequate organizational and technical processes and procedures in place to protect your personal information;"

b. "We aim to protect your personal information through a system of organizational and technical security measures;" and

---

[3] *About*, NELSON WORLDWIDE LINKEDIN, https://www.linkedin.com/company/nelsonworldwide/ (last visited March 11, 2026).

c. “We have implemented appropriate and reasonable technical and organizational security measures designed to protect the security of any personal information we process.”[4]

***Defendant’s Data Breach***

19. On or around March 6, 2026, Defendant’s network was accessed by cybercriminal group, Chaos.[5] Once Chaos gained access to Defendant’s systems, it exfiltrated 400 GB of data, including employees’ Private Information stored therein.[6]




---

[4] Privacy Policy, Nelson, https://nelsonworldwide.com/privacy-policy (last visited March 11, 2026).
[5] Ransomware.Live, https://www.ransomware.live/id/bmVsc29ud29ybGR3aWRlLmNvbUBjaGFvcw== (last visited March 11, 2026).
[6] *Id.*

20. According to reports, Chaos published a statement threatening that "The full leak will be published soon, unless a company representative contacts us via the channels provided."[7]

| Field | Details |
|---|---|
| Target | NELSON Worldwide |
| Domain | nelsonworldwide.com |
| Country | USA |
| Attacking Group | Chaos |
| Date Reported | March 6, 2026 |
| Threat Actor Statement | "The full leak will be published soon, unless a company representative contacts us via the channels provided." |

21. Chaos's post also provided a tally of the number of views the post had received, which indicated that it had at least 19 views.[8]

[7] DeXpose, Chaos Ransomware Strikes NELSON Worldwide, https://www.dexpose.io/chaos-ransomware-strikes-nelson-worldwide/ (last visited March 11, 2026).
[8] Ransomlook, https://www.ransomlook.io/screenshots/chaos/nelsonworldwidecom.png; (last visited March 11, 2026).




22. Chaos operates a "ransomware-as-a-service business" where cybercriminal customers can pay to use Chaos's ransomware software to launch attacks and collect ransoms.

23. According to Cisco Talos, Cisco's threat intelligence research organization,[9] Chaos is relatively new RaaS group that emerged as early as February 2025.[10] The Chaos group is actively promoting their cross-platform ransomware software in the dark web Russian-speaking cybercriminal forum Ransom Anon Market Place (RAMP) and is seeking collaboration with affiliates.

24. Chaos is known to use various methods, such as spam flooding and social engineering, to gain access to organizations' network.[11]

---

[9] *See Home Page*, CISCO TALOS, https://talosintelligence.com/ (last visited March 11, 2026).
[10] Anna Bennett, James Nutland, and Chetan Raghuprasad, *Unmasking the new Chaos RaaS group attacks*, CISCO TALOS (July 24, 2024), https://blog.talosintelligence.com/new-chaos-ransomware/.
[11] *Id.*

25. Once inside, it targets PII and uses "rapid selective encryption" to encrypt files and then employes legitimate file-sharing software for data exfiltration.[12]

26. Chaos then demands a ransom payment, threatening to disclose the stolen data of organizations who fail to meet their ransom demands on a "data leak site" it operates.[13]

27. Thus, on information and belief, Plaintiff's and the Class's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

28. And yet, Defendant has still not issued a statement regarding the Data Breach or attempted to notify impacted individuals.

29. Thus, Defendant has kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

30. Defendant failed its duties when its inadequate security practices caused the Data Breach. In other words, Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the Private Information. And thus, Defendant caused widespread injury and monetary damages.

31. Because of Defendant's Data Breach, the sensitive Private Information of Plaintiff and Class Members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and Class Members.

32. Thus, on information and belief, Plaintiff's and the Class's stolen Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

***Plaintiff's Experiences and Injuries***

---

[12] *Id.*
[13] *Id.*

33. Plaintiff Dyuthi Prakash is a former employee of Defendant, having worked for Defendant between 2022 and 2023.

34. Thus, Defendant obtained and maintained Plaintiff's Private Information.

35. As a result, Plaintiff was injured by Defendant's Data Breach.

36. Plaintiff is very careful about the privacy and security of her Private Information. She does not knowingly transmit her Private Information over the internet in an unsafe manner. She is careful to store any documents containing her Private Information in a secure location.

37. As a condition of receiving employment from Defendant, Plaintiff provided Defendant with her Private Information. Defendant used that Private Information to facilitate its business and provision of employment.

38. Plaintiff provided her Private Information to Defendant and trusted the company would use reasonable measures to protect it according to Defendant's internal policies, as well as state and federal law. Defendant obtained and continues to maintain Plaintiff's Private Information and has a continuing legal duty and obligation to protect that Private Information from unauthorized access and disclosure.

39. Plaintiff reasonably understood that a portion of the funds generated from her employment with Defendant would be used to pay for adequate cybersecurity and protection of Private Information.

40. Following the Data Breach, Plaintiff has experienced a large influx of spam calls. This further demonstrates that Plaintiff's information was stolen in the Data Breach has been placed in the hands of cybercriminals.

41. Once an individual's Private Information is for sale and access on the dark web, as Plaintiff's Private Information is here as a result of the Breach, cybercriminals are able to use

the stolen and compromised to gather and steal even more information.[14] On information and belief, the spam calls Plaintiff is experiencing are a result of the Data Breach.

42. Thus, on information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

43. Through its Data Breach, Defendant compromised Plaintiff's Private Information.

44. Plaintiff has spent—and will continue to spend—significant time and effort protecting herself from identity theft. Indeed, Plaintiff has already spent time contacting counsel, researching the Data Breach, monitoring her accounts, and disputing unknown charges with her bank.

45. Plaintiff fears for her personal financial security and worries about what information was exposed in the Data Breach.

46. Because of Defendant's Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

47. Plaintiff suffered actual injury from the exposure and theft of her Private Information—which violates her rights to privacy.

48. Plaintiff suffered actual injury in the form of damages to and diminution in the value of her Private Information. After all, Private Information is a form of intangible property—property that Defendant was required to adequately protect.

[14] What do Hackers do with Stolen Information, Aura, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited March 11, 2026).

49. Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendant's Data Breach placed Plaintiff's Private Information right in the hands of criminals.

50. Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate her injuries.

51. Today, Plaintiff has a continuing interest in ensuring that her Private Information—which, upon information and belief, remains backed up in Defendant's possession—is protected and safeguarded from additional breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

52. Because of Defendant's failure to prevent the Data Breach, Plaintiff and Class Members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

a. loss of the opportunity to control how their Private Information is used;

b. diminution in value of their Private Information;

c. compromise and continuing publication of their Private Information;

d. out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

e. lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud;

f. delay in receipt of tax refund monies;

g. unauthorized use of their stolen Private Information; and

h. continued risk to their Private Information—which remains in Defendant's possession—and is thus as risk for futures breaches so long as Defendant fails to take appropriate measures to protect the Private Information.

53. Stolen Private Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen Private Information can be worth up to $1,000.00 depending on the type of information obtained.

54. The value of Plaintiff and Class's Private Information on the black market is considerable. Stolen Private Information trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "Dark Web"—further exposing the information.

55. It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the Private Information far and wide.

56. One way that criminals profit from stolen Private Information is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross-referencing and combining two sources of data—first the stolen Private Information, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

57. The development of "Fullz" packages means that the Private Information exposed in the Data Breach can easily be linked to data of Plaintiff and the Class that is available on the internet.

58. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous

operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class Members' stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

59. Defendant disclosed the Private Information of Plaintiff and Class Members for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Private Information of Plaintiff and Class Members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Private Information.

60. Defendant's failure to promptly and properly notify Plaintiff and Class Members of the Data Breach exacerbated Plaintiff and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their Private Information and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant Knew—Or Should Have Known—of the Risk of a Data Breach***

61. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

62. In 2021, a record 1,862 data breaches occurred, exposing approximately 293,927,708 sensitive records—a 68% increase from 2020.[15]

63. Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware

---

[15] *See 2021 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2022) https://notified.idtheftcenter.org/s/.

of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[16]

64. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

***Defendant Failed to Follow FTC Guidelines***

65. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

66. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[17] The FTC declared that, *inter alia*, businesses must:

a. protect the personal customer information that they keep;

b. properly dispose of personal information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

---

[16] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

[17] *Protecting Personal Information: A Guide for Business,* FED TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

67. The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

68. Furthermore, the FTC explains that companies must:

a. not maintain information longer than is needed to authorize a transaction;

b. limit access to sensitive data;

c. require complex passwords to be used on networks;

d. use industry-tested methods for security;

e. monitor for suspicious activity on the network; and

f. verify that third-party service providers use reasonable security measures.

69. The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

70. In short, Defendant's failure to use reasonable and appropriate measures to protect against unauthorized access to its current and former employees' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

71. Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-

malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

72. Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

73. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

74. These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

## CLASS ACTION ALLEGATIONS

75. Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose Private Information was compromised in the Data Breach experienced by Nelson Worldwide, LLC in March 2026, including all those individuals who received notice of the breach.

76. Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

77. Plaintiff reserves the right to amend the class definition.

78. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

79. Ascertainability. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. After all, Defendant already identified some individuals and sent them data breach notices.

80. Numerosity. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least thousands of members.

81. Typicality. Plaintiff's claims are typical of Class Members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

82. Adequacy. Plaintiff will fairly and adequately protect the proposed Class's common interests. her interests do not conflict with Class Members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

83. Commonality and Predominance. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting

individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer the following questions:

a. if Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Private Information;

b. if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. if Defendant were negligent in maintaining, protecting, and securing Private Information;

d. if Defendant breached contract promises to safeguard Plaintiff and the Class's Private Information;

e. if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f. if Defendant's Breach Notice was reasonable;

g. if the Data Breach caused Plaintiff and the Class injuries;

h. what the proper damages measure is; and

i. if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

84. Superiority. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for

their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

## FIRST CAUSE OF ACTION
**Negligence**
**(On Behalf of Plaintiff and the Class)**

85. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

86. Plaintiff and the Class entrusted their Private Information to Defendant on the premise and with the understanding that Defendant would safeguard their Private Information, use their Private Information for business purposes only, and/or not disclose their Private Information to unauthorized third parties.

87. Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their Private Information in a data breach. And here, that foreseeable danger came to pass.

88. Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if their Private Information was wrongfully disclosed.

89. Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices.

After all, Defendant actively sought and obtained Plaintiff and Class Members' Private Information.

90. Defendant owed—to Plaintiff and Class Members—at least the following duties to:

a. exercise reasonable care in handling and using the Private Information in its care and custody;

b. implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

c. promptly detect attempts at unauthorized access;

d. notify Plaintiff and Class Members within a reasonable timeframe of any breach to the security of their Private Information.

91. Thus, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their Private Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

92. Defendant also had a duty to exercise appropriate clearinghouse practices to remove Private Information it was no longer required to retain under applicable regulations.

93. Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

94. Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship

arose because Plaintiff and the Class entrusted Defendant with their confidential Private Information, a necessary part of obtaining employment from Defendant.

95. Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff and Class Members' Private Information.

96. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the Private Information entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the Class Members' sensitive Private Information.

97. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

98. The risk that unauthorized persons would attempt to gain access to the Private Information and misuse it was foreseeable. Given that Defendant hold vast amounts of Private Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Private Information —whether by malware or otherwise.

99. Private Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Private Information of Plaintiff and Class Members' and the importance of exercising reasonable care in handling it.

100. Defendant improperly and inadequately safeguarded the Private Information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

101. Defendant breached these duties as evidenced by the Data Breach.

102. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' Private Information by:

a. disclosing and providing access to this information to third parties and

b. failing to properly supervise both the way the Private Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

103. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and Private Information of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff and Class Members' injury.

104. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class Members' injuries-in-fact.

105. Defendant has admitted that the Private Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

106. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

107. And, on information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

108. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Private Information by criminals, improper disclosure of their Private Information, lost benefit of their bargain, lost value of their Private Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**SECOND CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

109. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

110. Plaintiff and Class Members were required to provide their Private Information to Defendant as a condition of employment with Defendant. Plaintiff and Class Members provided their Private Information to Defendant in exchange for Defendant's employment.

111. Plaintiff and Class Members reasonably understood that a portion of the funds they generated through their employment would be used to pay for adequate cybersecurity measures.

112. Plaintiff and Class Members reasonably understood that Defendant would use adequate cybersecurity measures to protect the Private Information that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

113. Plaintiff and the Class Members accepted Defendant's offers by disclosing their Private Information to Defendant or its third-party agents in exchange for employment.

114. In turn, and through internal policies, Defendant agreed to protect and not disclose the Private Information to unauthorized persons.

115. In its Privacy Policy, Defendant represented that they had a legal duty to protect Plaintiff's and Class Member's Private Information.

116. Implicit in the parties' agreement was that Defendant would provide Plaintiff and Class Members with prompt and adequate notice of all unauthorized access and/or theft of their Private Information.

117. After all, Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of such an agreement with Defendant.

118. Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

119. The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

120. Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

121. Defendant materially breached the contracts it entered with Plaintiff and Class Members by:

a. failing to safeguard their information;

b. failing to notify them promptly of the intrusion into its computer systems that compromised such information.

c. failing to comply with industry standards;

d. failing to comply with the legal obligations necessarily incorporated into the agreements; and

e. failing to ensure the confidentiality and integrity of the electronic Private Information that Defendant created, received, maintained, and transmitted.

122. In these and other ways, Defendant violated its duty of good faith and fair dealing.

123. Defendant's material breaches were the direct and proximate cause of Plaintiff's and Class Members' injuries (as detailed *supra*).

124. And, on information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

125. Plaintiff and Class Members performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

## THIRD CAUSE OF ACTION
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

126. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

127. Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential Private Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

128. Defendant owed a duty to its current and former employees, including Plaintiff and the Class, to keep this information confidential.

129. The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class Members' Private Information is highly offensive to a reasonable person.

130. The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

131. The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

132. Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

133. Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

134. Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

135. As a proximate result of Defendant's acts and omissions, the private and sensitive Private Information of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages (as detailed *supra*).

136. And, on information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

137. Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their Private Information are still maintained by Defendant with their inadequate cybersecurity system and policies.

138. Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Private Information of Plaintiff and the Class.

139. In addition to injunctive relief, Plaintiff, on behalf of herself and the other Class Members, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

140. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

141. This claim is pleaded in the alternative to the breach of implied contract claim.

142. Plaintiff and Class Members conferred a benefit upon Defendant. After all, Defendant benefitted from (1) using their Private Information to facilitate its business, and (2) profits generated from their employment.

143. Defendant appreciated or had knowledge of the benefits it received from Plaintiff and Class Members.

144. Plaintiff and Class Members reasonably understood that Defendant would use adequate cybersecurity measures to protect the Private Information that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

145. Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information.

146. Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

147. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and Class Members' (1) Private Information and (2) funds generated from their employment because Defendant failed to adequately protect their Private Information.

148. Plaintiff and Class Members have no adequate remedy at law.

149. Defendant should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class Members—all unlawful or inequitable proceeds that it received because of its misconduct.

## FIFTH CAUSE OF ACTION
**Violation of the Minnesota Uniform Deceptive Trade Practice Act**
**Minn. Stat. § 325D.43-48**
**(On Behalf of Plaintiff and the Class)**

150. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

151. The Minnesota Uniform Deceptive Trade Practice Act, Minn. Stat. § 325D.43-48 ("MDUPTA") prohibits deceptive trade practices in person's business, vocation, or occupation. *See* Minn. Stat. § 325D.44(1).

152. MDUPTA applies to Defendant because Defendant advertised, offered, sold, and/or provided goods or services in Minnesota.

153. Defendant violated MDUPTA by, *inter alia*:

a. failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class Members' Private Information, which was a direct and proximate cause of the Data Breach;

b. failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq.*, which was a direct and proximate cause of the Data Breach;

d. omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class Members' Private Information; and

e. omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and

privacy of Plaintiff's and Class Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq*.

154. Defendant's omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of their Private Information.

155. Defendant intended to mislead Plaintiff and Class Members and induce them to rely on its omissions.

156. Had Defendant disclosed to Plaintiff and Class Members that its data systems were not secure—and thus vulnerable to attack—Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Defendant accepted the Private Information that Plaintiff and Class Members entrusted to it while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff and Class Members acted reasonably in relying on Defendant's omissions, the truth of which they could not have discovered through reasonable investigation.

157. Defendant acted intentionally, knowingly, maliciously, and recklessly disregarded Plaintiff's and Class Members' rights.

158. As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Private Information.

159. And, on information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

160. Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law.

## PRAYER FOR RELIEF

Plaintiff and Class Members respectfully request judgment against Defendant and that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing her counsel to represent the Class;

B. Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

C. Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

D. Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

E. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

F. Awarding attorneys' fees and costs, as allowed by law;

G. Awarding prejudgment and post-judgment interest, as provided by law;

H. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

I. Granting other relief that this Court finds appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.

Dated: March 11, 2026

Respectfully submitted,

By: /s/ Raina C. Borrelli
Raina C. Borrelli
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

*Attorneys for Plaintiff and the Proposed Class*